# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. CR411-347 |
| | ) | |
| CAMERON B. KNIGHT | ) | |

## O R D E R

Charged with driving under the influence of alcohol, marijuana possession, and other offenses, doc. 1, Cameron B. Knight moves to suppress the evidence against him. Doc. 11. While there was still daylight on the evening of June 15, 2011, Knight lost control of his car and crashed into a perimeter fence at the Hunter Army Airfield Military Reservation in Savannah, Georgia. Another motorist, off-duty soldier David Bender,[1] stopped to assist, and both civilian and military police (MP), as well as Emergency Medical Treatment personnel, soon arrived.

---

[1] Bender testified that Knight had sped past him then crashed. Bender, along with another off-duty soldier who stopped to help, then confronted Knight, who exhibited dilated pupils despite ample daylight. Knight told Bender that someone was after him and claimed that he "suffered from PTSD." When it appeared that Knight intended to leave the scene, Bender and the other soldier impeded him from doing so until the police arrived.

Three MPs -- Alfredo Olivio, Ryan Rollins and Frank Latchford -- encountered an unmistakably incoherent Knight who was so combatively uncooperative that he could not be given a field sobriety test[2] or Intoxilyzer test until later in the evening (both of which he failed). A fourth MP, identified to the Court only as "Sgt. Cummings," arrested Knight for driving under the influence (DUI) and advised him of his *Miranda*[3] rights. MP Latchford then searched Knight's car and found a marijuana cigarette.

Knight contends that (a) he was arrested without probable cause; (b) the field sobriety test results are inadmissible because they are the

---

[2] A handbook on Georgia law explains:

> Field sobriety tests are a tool to help collect pertinent information about the driver's condition. They are not "scientific" tests that require proof of their reliability. *State v. Pastorini*, 222 Ga. App. 316, 474 S.E.2d 122 (1996). . . . A driver cannot be compelled to perform a field sobriety test, though the officer has no affirmative duty to inform the driver that the test is voluntary. *Bramlett v. State*, 302 Ga. App. 527, 691 S.E.2d 333 (2010). A driver's refusal to take a field sobriety test is admissible against him at trial. *Bravo v. State*, 249 Ga. App. 433, 548 S.E.2d 129 (2001).

COURTROOM HANDBOOK GA. EVID. D5 (2011 ed.).

[3] *Miranda v. Arizona*, 384 U.S. 436 (1966). Rollins testified that he heard Sgt. Cummings *Mirandize* Knight as well as inform him of his rights under Georgia's Implied Consent Statutes, O.C.G.A. §§ 40–5–55 and 40–5–67.1(b). *See Padidham v. State*, ___ Ga. ___, 2012 WL 1571546 at * 1 (May 7, 2012).

product of a custodial interrogation for which he was not first *Mirandized*; and (c) the vehicle search violated the Fourth Amendment because it was warrantless and no exception to the warrant requirement saves the search. Doc. 11 at 1-6. He wants all of the evidence suppressed. *Id.* at 1.

The unrebutted testimony of the government's witnesses establishes that Knight, while impaired by alcohol, lost control of his car and crashed it into the airfield's perimeter fence. Bender and MPs Olivio, Rollins, and Latchford witnessed Knight's visibly disoriented and uncooperative behavior, and the police detected the strong odor of alcohol on him.[4] Ample probable cause, therefore, supported Knight's DUI arrest. *See, e.g., Gage v. City of Baker City*, 432 F. App'x 664, 664 (9th Cir. 2011); *United States v. Chavez*, 660 F.3d 1215, 1224-25 (10th Cir. 2011).

---

[4] Witness Bender and MP Olivio did not testify that Knight emitted such an odor, but Olivio learned from local police officers who arrived on the scene before him that they detected it. MP Rollins testified that he in fact did detect the alcohol odor, as did Latchford, who had his hand on Knight's arm when he smelled "an intense odor of alcohol" emanating from him.

The Court also finds that, contemporaneous to Knight's arrest, an MP administered *Miranda* warnings *at the scene*, before he was transported to the MP station and field-tested. Meanwhile, Rollins assisted another MP in the search of Knight's car "initially … for alcoholic beverages because we did suspect him of DUI." But he also relied upon the MP established inventory policy, which requires an inventory search of all impounded vehicles.[5] Upon entering the vehicle, the MPs discovered a marijuana cigarette in the car's open ashtray.

Knight offered no evidence to contradict the suppression hearing testimony that the MPs acted pursuant to an established impound policy that, standing alone, authorized an inventory search of his vehicle. *See Colorado v. Bertine*, 479 U.S. 367, 375-76(1987); *South Dakota v. Opperman*, 428 U.S. 364, 372-73 (1976); *United States v. Foskey*, 455 F. App'x. 884, 888-90 (11th Cir. 2012). Nor does he dispute that the

---

[5] Knight's vehicle was rendered inoperable as a result of crashing into the fence and had to be towed from the scene. Knight's father testified that he offered to tow the vehicle himself but was prevented from approaching the accident scene while the investigating officers and EMT personnel performed their duties. The officer who prevented his access told him that the wrecked vehicle would be impounded as evidence.

marijuana would inevitably have been found pursuant to such an inventory search.

But even if Knight's vehicle had not been impounded, the law is clear that the police may warrantlessly search a vehicle incident to an arrest if, in circumstances unique to the automobile context, they reasonably believe that it contains evidence relevant to the crime of arrest. *Arizona v. Gant*, 556 U.S. 332, 343-44 (2009). Here, the officers who responded to this single-car accident quickly developed probable cause to believe not only that Knight was driving under the influence but also that, given the strong odor of alcohol on his breath and his agitated and disoriented state, he had *recently* consumed alcohol. It was reasonable for the officers to conclude that evidence of that alcohol consumption would be found in Knight's vehicle. Thus, they were free to search that vehicle for alcohol-consumption evidence. *Id*; *United States v. Alexander*, 2012 WL 48214 at * 7 (6th Cir. Jan. 10, 2012); *United States v. Adigun*, 2012 WL 2194253 at * 16 (N.D. Ga. May 4, 2011).

Knight did not testify at the suppression hearing. Nor did he call any witness or offer any evidence that contradicted the testimony of the government's witnesses. The Court specifically credits their account of

5

the events as reliable and trustworthy. Faced with a motorist who had crashed his vehicle into a fence, smelled strongly of alcohol, and was overwrought and uncooperative, the officers clearly had reasonable grounds to believe that Knight was a less safe driver due to the consumption of alcohol. Knight's contention that the officers lacked probable cause to arrest him is meritless. Further, the officers were perfectly justified in detaining Knight until he was sufficiently calm and mentally stable to perform a field sobriety test. His poor performance on that test, coupled with an Intoxilizer reading of .122, cinched the probable cause issue.

Knight's argument that the results of the field sobriety test are inadmissible because he was not first advised of his *Miranda* rights rests on a false premise. As noted earlier, the testimony establishes that he was advised of his *Miranda* rights while still at the roadside, before he submitted to a field sobriety test. But even if correct on the facts, he is wrong on the law. Knight cites a Georgia case for the proposition "that under Georgia law *Miranda* warnings must precede a request to perform a field sobriety test when the suspect is 'in custody.'" (Doc. 11 at 4.) But

as the cited case itself points out, "[a] defendant who raises only a federal law challenge will not succeed because under the U.S. constitution the prohibition against self-incrimination applies only when the evidence is 'testimonial' and field sobriety tests are not 'testimonial' in nature." *Price v. State*, 269 Ga. 222, 265 (1998). This is a correct statement of federal law. *See Pennsylvania v. Muniz*, 496 U.S. 582, 602-05 (1990) (*Miranda* warnings are not required prior to a field sobriety test that elicits only physical evidence (such as a motorist's slurred speech, imbalance, or abnormal eye movement), for the Fifth Amendment privilege against self-incrimination is implicated only where a suspect is compelled to produce evidence of a testimonial or communicative nature). Since it is federal, not state, law that governs the suppression of evidence in a federal criminal case, *United States v. Noriega*, ___ F.3d ___, 2012 WL 1193542 n. 4 (11th Cir. Apr. 11, 2012) ("federal law, not state law, governs the admissibility of evidence in federal court, and 'complaints that the evidence was obtained in violation of state law are of no effect'") (quoting *United States v. Glinton*, 154 F.3d 1245, 1252 (11th Cir. 1998)), Knight's reliance upon Georgia law is misplaced and unhelpful.

Knight has failed to establish that any of his federal constitutional rights were violated by the investigating officers. His motion to suppress is therefore **DENIED**.

**SO ORDERED** this _23__ day of May, 2012.

UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA